UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROGER COKER,

    Plaintiff,

vs.                                                                                               Case No.  3:06-cv-135-J-MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

        Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Plaintiff's appeal of a final administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, it is recommended the Commissioner's decision be **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") on April 11, 2003, alleging an inability to work since June 16, 1995.  (Tr.  52-53).  The Social Security Administration ("SSA") denied these applications initially and on reconsideration.  (Tr.  28-31, 33-35).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on July 7, 2005.  (Tr.  219-43).  On October 28, 2005, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 15-23). On November 9, 2005, Plaintiff filed a Request for Review by the Appeals Council.  (Tr.

8-10).  The Appeals Council denied Plaintiff's Request for Review, thus making the ALJ's October 28, 2005 decision the final decision of the Commissioner.  (Tr.  4-6). Plaintiff timely filed his Complaint in the U.S. District Court.  (Doc. 1).

**II.     NATURE OF DISABILITY CLAIM**

**A.     Basis of Claimed Disability**

Plaintiff claims to be disabled since June16, 1995, due to an injury to his left knee.  (Tr. 58-67, 67-74).

**B.     Summary of Evidence Before the ALJ**

Plaintiff was 44 years of age on the date of the hearing.  (Tr.  222).  He has a 10th grade education, but no special job training or vocational schooling.  (Tr.  65, 223). Plaintiff has past relevant work experience as a carpenter.  (Tr.  223).  The record indicates Plaintiff suffered an injury to his left knee on June 16, 1995, when he stepped into a hole while carrying a full tool belt and sawhorse.  (Tr.  115, 229).  Plaintiff testified that he also suffers from depression, lack of sleep, right ankle pain, left shoulder pain, back pain, neck pain, wrist pain, and finger pain.  (Tr.  229).  Although Plaintiff testified at the hearing he had not been to the emergency room for any of these symptoms, he has been treated or examined by several physicians for such conditions.  (Tr.  230, 102-218).

On December 12, 1995, Plaintiff presented to Bahri Orthopedics & Sports Medicine Clinic for pain resulting from the work related injury to his left knee.  (Tr.110). Fady Bahri, M.D., performed left knee arthroscopy on Plaintiff on February 12, 1996. (Tr.  105).  Progress notes from the Clinic suggest Plaintiff was able to apply full weight to his knee almost immediately following surgery.  (Tr.  104).  Dr.  Bahri recommended

Plaintiff return to work approximately three months after the surgery.  (Tr.  102).

Bruce A.  Hartwig, M.D., examined Plaintiff on November 19, 1997, and noted the existence of atrophy in his left knee.  (Tr.  111-12).  On July 16, 1997, Plaintiff began treatment with John F. Lovejoy, Jr., M.D., of the Orthopaedic Clinic of Jacksonville.  (Tr. 122).  At his first visit, Dr. Lovejoy noted the atrophy of Plaintiff's knee.  Id.  At his last visit, on June 21, 2000, Dr. Lovejoy diagnosed Plaintiff with degenerative arthritis with chondromalacia of the left knee.  (Tr, 117).  In his June 2000 report, Dr. Lovejoy stated, "I think that he is not going to be able to return to his carpenter work and cannot find any job with bench work...."  (Tr.  118).

Webster Williams, Jr., M.D., of the Williams Knee Clinic, determined Plaintiff's most disabling problem was atrophy of the left leg on June 3, 1999.  (Tr.  113).  Dr. Williams stated, "I feel that [Plaintiff's] condition is supported by the objective findings of the atrophy of the musculature."  Id.  In addition, Dr.  Webster concurred with Dr. Lovejoy's opinion that Plaintiff's total body PMI was 8% -- secondary to Plaintiff's knee impairment.  (Tr.  114).  Dr. Webster also stated Plaintiff had reached his maximum medical improvement and his impairment would not change.  Id.

Plaintiff presented to John D.  Moore, D.C., for left shoulder pain on November 10, 2000.  (Tr.  125-26).  Dr.  Moore found tenderness upon palpation of the left biceps tendon and mild hypertoncity of the left proximal trapezius musculature.  (Tr.  125).

Plaintiff was treated at the Clay County Health Department from December 14, 2000 to June 3, 2003 for various symptoms including depression, muscular skeletal pain, arthritis, psoriasis, and insomnia.  (Tr.  127-52).  Plaintiff was prescribed a variety of medication – including, but not limited to, Zoloft, Celebrex, Methadon, and Paxil – to

3

treat these symptoms within the three years of treatment. (Tr. 130).

At a consultative examination on July 3, 2003, R.D. House, M.D., opined Plaintiff suffered from a depressive state with anxiety and agitation. (Tr. 154). In addition, Dr. House diagnosed Plaintiff with degenerative disc disease in his lower back, moderately severe degenerative arthritis in his right ankle, decreased grip in his right hand, and psoriasis on the back of his knees. Id.

On July 16, 2003, Plaintiff presented to Saneha Reena Goyal, Psy.D., a licensed clinical psychologist at the First Coast Therapy Group. (Tr. 156). At this consultative examination, Dr. Goyal diagnosed Plaintiff with major depressive disorder and noted his inability to work. (Tr. 158). Dr. Goyal concluded "[t]his claimant has a questionable prognosis for recovery from his chronic pain. He needs psychological and psychiatric intervention to deal with his depressive symptoms." Id. A few days later, however, a Psychiatric Review Technique Form, completed by Patricia A. Boger, Ph.D., indicated Plaintiff's mental impairments were not severe. (Tr. 159). A second Psychiatric Review Technique Form was completed by A. Alvarez-Mullin, M.D., on January 23, 2004. Dr. Alvarez-Mullin also concluded Plaintiff's mental impairments were not severe. (Tr. 190).

Two Residual Functional Capacity Assessments were completed with regard to Plaintiff's condition. (Tr. 173-89). Both assessments suggest Plaintiff was able to occasionally lift or carry a maximum of 20 pounds, frequently lift or carry a maximum of 10 pounds, stand or walk about 6 hours in an 8-hour work day, and push or pull with unlimited capabilities. Id.

On May 31, 2005, C.V. Lazo, M.D., performed a Physical Residual Functional

Capacity Assessment. (Tr. 205). Dr. Lazo determined Plaintiff's depression and anxiety were affecting his physical condition. (Tr. 206). Dr. Lazo found Plaintiff's experiences with pain or other symptoms were severe enough to interfere often with his concentration and attention, and Plaintiff's emotional factors contributed to the severity of his functional limitations. Id. In addition, Dr. Lazo found Plaintiff could walk less than 1 block without rest, sit for 15-20 minutes, stand for 15 minutes, or less than 2 hours total in an 8-hour workday. (Tr. 207). Importantly, Dr. Lazo concluded that Plaintiff was "unable to be in a work situation." Id.

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education,

and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 16). At step two, the ALJ found Plaintiff had "degenerative disc disease, residual effects from orthroscopic surgery on the left knee, and depression, impairments that are 'severe' within the meaning of the Regulations." Id. The ALJ further determined Plaintiff's severe impairments did not meet or equal in severity any listed impairment in Appendix 1, Subpart P, Regulations No. 4. (Tr. 17). The ALJ then determined Plaintiff retained the residual functional capacity to sit up to 6 hours, stand up to 2 hours and lift up to 10 pounds occasionally." (Tr. 20). However, the ALJ found:

> [Plaintiff] cannot do any climbing or work around heights or dangerous machinery. He cannot kneel, crouch or crawl. Secondary to his affective disorder, he is limited to unskilled, entry level, simple, repetitive work.

Id. In making the determination that Plaintiff was limited to sedentary work at step four, the ALJ found Plaintiff was not able to perform his past work as a residential carpenter. Id.

At step five, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine if Plaintiff could perform any jobs existing in the national economy based on his age, education, past relevant work experience and residual functional capacity as determined. (Tr. 21). The VE explained Plaintiff would be able to perform work as a table worker, a surveillance systems monitor, and a call out operator. Id.

The ALJ utilized the testimony of the VE and determined that based on his age, educational background, work experience, and residual functional capacity, Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy." Id. Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. Id.

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issue on Appeal

Plaintiff argues one issue on appeal -- that the ALJ erred by failing to properly develop the record when he did not order an updated consultative examination to further examine Plaintiff's mental condition. (Doc. 7, p. 11). Plaintiff asserts the ALJ should have ordered a consultative examination because the most recent medical evidence regarding Plaintiff's mental impairment was approximately two years old, Plaintiff complained of ongoing mental problems during the hearing, and Plaintiff was financially unable to obtain medical treatment. (Doc. 7, p. 1). The Commissioner responds that the ALJ properly developed the record and an additional consultative evaluation was not necessary for the ALJ to determine disability. (Doc. 21).

**Whether the ALJ erred by failing to properly develop the record.**

During the July 7, 2005 hearing, Plaintiff requested an additional psychological consultative evaluation to assess his alleged ongoing symptoms of depression. (Tr. 236). Plaintiff represented he suffered from depression, but had not been examined by a physician in several years because he could not afford it. (Tr. 236-37, 242). He further represented the last psychologist who examined him found he suffered from major depression and opined his prognosis was poor unless he had some therapy. (Tr. 242).

The ALJ denied Plaintiff's request based on the psychological evaluation performed by Dr. Goyal on July 16, 2003. Id. According to the ALJ, that consultative

examination determined "there was no basis for further testing regarding mental impairments." (Tr. 19).  Accordingly, the ALJ determined that there was no evidence of Plaintiff's continuing problem with depression and a new consultative examination was not necessary.  Id.

Plaintiff claims the ALJ had a duty to properly develop the record.  (Doc. 7, p. 1, 11-16).  Plaintiff further claims the ALJ failed to do so by denying his request for an additional mental evaluation and by relying on Dr. Goyal's 2003 evaluation to determine that Plaintiff was not disabled.  Id.  In response, the Commissioner argues the ALJ properly considered the record and Plaintiff failed to show that another consultative psychological examination was necessary for the ALJ to make an informed decision. (Doc. 13, p. 6-8).

Both parties are correct in their restatements of the law.  Indeed it is Plaintiff's responsibility to "provide medical evidence showing...an impairment(s) and how severe it is." 20 C.F.R. § 404.1512(c).  On the other hand, the ALJ has a duty to fully and fairly develop the record.  Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988).  The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.  Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984), citing Ford v. Secretary of Health & human Servs., 659 F.2d 66, 69 (5th Cir. 1981) (Unit B).  A claimant's testimony of a psychological impairment and suggestions of a mental problem by treating physicians may be sufficient to require a consultative opinion from a psychologist or psychiatrist.  McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988).

In this case, the ALJ was required to order an additional consultative evaluation

9

to further investigate the Plaintiff's potential mental impairment.  The record indicates Plaintiff was diagnosed or treated for depression as early as 2001 and he continued to suffer from depression through at least 2003.  (Tr. 140,146-50,154, 157-58).  This evidence is contrary to the ALJ's conclusory statement that "there is no evidence of a continuing problem with depression."  (Tr. 19).  In fact, after a psychological evaluation performed on July 16, 2003, Dr. Goyal determined Plaintiff "need[ed] psychological and psychiatric intervention to deal with his depressive symptoms."  (Tr.  158).  Moreover, Dr. Goyal concluded Plaintiff had "major depressive disorder" and an "inability to work." Id.

Dr. Goyal's 2003 assessment of Plaintiff's depression, as well as the medical evidence showing Plaintiff was being treated for depression over a two year span, should have triggered the ALJ to further inquire into Plaintiff's mental condition and its potential effects on his ability to work.[1]  Instead, the ALJ completely ignored the majority of the medical evidence suggesting Plaintiff suffered from depression.  Moreover, he rejected Dr. Goyal's 2003 opinion and determined "there was no basis for further testing."  (Tr.  19).  In particular, the ALJ claimed Dr. Goyal's Global Assessment of Functioning ("GAF") of 55 was "inconsistent with a finding of total disability as it indicates only some *moderate symptoms*."  Id.  It is unclear why "moderate symptoms" of a mental impairment caused the ALJ to outright reject any further assessment into

---

[1] The Court takes note that two physicians completed Psychiatric Review Technique Forms and found Plaintiff's mental impairments were not severe.  Despite this fact, there is sufficient evidence from examining physicians in the record to suggest Plaintiff did suffer from a mental impairment which could affect his ability to work.  The ALJ should have recognized this fact and ordered a consultative exam so that he could make an informed decision.

Plaintiff's alleged mental condition.

As Plaintiff correctly states, it is the ALJ's duty to "investigate the facts and develop the arguments both for and against granting benefits. . . ." Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000).  Here, the evidence demonstrated Plaintiff suffered from depression and he had not been examined by a doctor since two years prior to his hearing.  Indeed, a second consultative evaluation could have determined that moderate symptoms, in combination with Plaintiff's physical impairments, results in Plaintiff's inability to maintain work.

The ALJ improperly rejected Dr. Goyal's opinion without substantial evidence of its inaccuracy or lack of credibility.  Rather than providing reasons why Dr. Goyal's opinion did not require additional consideration, the ALJ simply stated "the diagnosis of depression by the consultative examiner represents only a one time snapshot and there is no evidence of a continuing problem with depression." (Tr.19).  The ALJ was clearly mistaken in calling this report a "one time snapshot" of Plaintiff's depression in light of the evidence that suggests Plaintiff suffered from depression for at least two years. Moreover, even assuming, *arguendo,* it was a "one time snapshot" of a mental disability, there is a possibility that Plaintiff's mental condition had the potential to get worse from 2003 through the date of the hearing, especially since Dr. Goyal explicitly stated in his report that Plaintiff "need[ed] psychological and psychiatric intervention to deal with his depressive symptoms."  (Tr.  158).

Notably, Plaintiff reiterated the existence of depressive symptoms at the July 2005 hearing.  (Tr.  236).  Plaintiff's testimony at the hearing indicated he could have still been suffering from "major depressive disorder," as Dr. Goyal had diagnosed two

years earlier.  At the very least, Plaintiff's continuing complaints of depression were an indication that another consultative examination was necessary for the ALJ to determine the severity of Plaintiff's mental impairment.  Two years had passed since any physician had examined Plaintiff's mental health, and Plaintiff stated he could not afford to pay for treatment.  (Tr. 235).   While Dr. Goyal may not have put Plaintiff on a definitive treatment plan, he did diagnosis Plaintiff with Major Depressive Disorder and opined that he "needs psychological and psychiatric intervention to deal with his depressive symptoms." (Tr. 158).  The fact that Plaintiff cannot afford to pay for treatment may excuse his noncompliance and the ALJ should have at least considered this fact when deciding whether to order a consultative exam.  See Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) ("We agree with ever circuit that has considered the issue that poverty excuses noncompliance.").

The ALJ erred when he rejected Plaintiff's request for an updated consultative psychological evaluation, because such examination was necessary to fully develop the record and enable the ALJ to make an informed decision regarding disability.  Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir.  1984).  Accordingly, the Court will remand the case to the Commissioner for further proceedings, including, but not limited to reconsideration of Plaintiff's mental impairment after ordering a psychological consultation for Plaintiff, and to continue with analysis of Plaintiff's disability.

**V.    CONCLUSION**

For the foregoing reasons, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards.  Accordingly, it is hereby

**ORDERED**:

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g) for the purpose of allowing the ALJ to order an updated consultative psychological examination of Plaintiff and to make express findings concerning Plaintiff's mental impairment, in combination with Plaintiff's other limitations, and for any further proceedings the ALJ finds necessary in light of those new findings.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ENTERED** at Jacksonville, Florida, this  22nd  day of November, 2006.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record